IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**KATHERINE J. GUNTHER**,                                     Civil Case No. 09-6293-KI

                 Plaintiff,

     vs.                                                                              OPINION AND ORDER

**COMMISSIONER SOCIAL SECURITY
ADMINISTRATION**,

                 Defendant.


     Alan Stuart Graf
     Attorney at Law
     316 Second Rd
     Summertown, TN 38483

          Attorney for Plaintiff

     Dwight C. Holton
     United States Attorney
     District of Oregon

Page 1 - OPINION AND ORDER

Adrian L. Brown
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, Oregon  97204

Leisa A. Wolf
Social Security Administration
Office of General Counsel
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington  98104

       Attorneys for Defendant


KING, Judge:

Katherine Gunther brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance benefits ("DIB") under Title II of the Social Security Act.

## PROCEDURAL BACKGROUND

Ms. Gunther filed an application for benefits on October 3, 2005.  The claim was denied initially and upon reconsideration.  Ms. Gunther requested a hearing, which was held before administrative law judge ("ALJ") Jean Kingrey on December 20, 2006.  At the hearing, Ms. Gunther amended the alleged onset date to January 10, 2005.  Ms. Gunther's date last insured for DIB is March 31, 2006.  The ALJ issued a decision on April 25, 2007, finding Ms. Gunther not disabled.  When the Appeals Council denied a request for review, the ALJ's decision became the final decision of the Commissioner.

Ms. Gunther was born in 1950, and was 57 years old at the time of the ALJ's decision. She has an associate of arts degree.  She has not engaged in substantial gainful activity since

Page 2 - OPINION AND ORDER

January 2005.  Her past relevant work is a matter of dispute.  Ms. Gunther asserts that it was

Nursery School Attendant, defined in the Dictionary of Occupational Titles ("DOT")[1] under

number 359.677-018.  The Commissioner asserts that it was Teacher Aide II, DOT 249.367-074.

Ms. Gunther alleges disability on the basis of chronic back pain, degenerative disk disease of the

lumbar spine, obesity, anxiety, depression and chronic pain syndrome.

### THE SEQUENTIAL EVALUATION

The Commissioner has established a five-step sequential process for determining whether

a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520,

416.920.  At step one, the Commissioner determines whether the claimant has engaged in any

substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If not, the Commissioner

goes to step two, to determine whether the claimant has a "medically severe impairment or

combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c),

416.920(c).  That determination is governed by the "severity regulation," which provides:

---

[1]The Dictionary of Occupational Titles ("DOT") is a publication of the United States
Department of Labor that gives detailed requirements for a variety of jobs.  The Social Security
Administration has taken administrative notice of the DOT.  Massachi v. Astrue, 486 F.3d 1149,
1153 n. 8 (9th Cir. 2007); see also  See United States Department of Labor, DOT (4th ed. 1991),
available at http://www.occupationalinfo.org.  The Social Security Administration relies
"primarily on the DOT" for "information about the requirements of work in the national
economy" at steps four and five of the sequential evaluation process.  Social Security Ruling
("SSR") 00-4P, 2000 WL 1898704, *2 (S.S.A.) (Use of vocational experts and occupational
information in disability decisions).  For purposes of determining whether a claimant can
perform gainful activity, the Commissioner may rely on the general job characteristics of the
DOT as presumptively applicable to the claimant's prior work, but the claimant may overcome
the presumption that the entry for a given job title applies to her by demonstrating that the duties
in her particular line of work were not as described.  See, e.g.,  Villa v. Heckler, 797 F.2d 794 (9th
Cir. 1986).

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

§§ 404.1520(c), 416.920(c).  If the impairment is severe, the evaluation proceeds to the third step, where the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41.  If a claimant's impairment meets or equals one of the listed impairments, she is considered disabled without consideration of her age, education or work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the impairment is considered severe, but does not meet or equal a listed impairment, the Commissioner considers, at step four, whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant shows an inability to perform her past work, the burden shifts to the Commissioner to show, in step five, that the claimant has the residual functional capacity ("RFC") to do other work in consideration of the claimant's age, education and past work experience.  Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 416.920(f).

## MEDICAL EVIDENCE

The parties accept the ALJ's summary of the medical evidence except as discussed below.

## HEARING TESTIMONY

Ms. Gunther testified at the hearing that she had an associate of arts degree in fine art and a nursery school certificate.  She said that at her last job, at the YMCA, she was taking care of

children aged two and a half to five, changing diapers when necessary, setting up their beds, giving them lunch, and reading to them.  Ms. Gunther said she did not know how to use a computer, and that she did not do any record-keeping or filling out of forms on that job.  She began the job working six to eight hours a day, but was eventually cut to two hours, during which she helped small children "get acquainted with" swimming.

Ms. Gunther said she was unable to sit or stand for long periods, and needed to move around.  She is on a medication schedule that involves five to six Oxycontin a day.  She said she was able to walk for about 15-20 minutes

The ALJ called a vocational expert ("VE"), Vernon Arne, to testify.  The ALJ asked the VE to consider an individual of Ms. Gunther's age, education and vocational history, able to perform the exertional requirements of light work with the additional limitations of  no "prolonged continuous sitting," and only occasional climbing, stooping, kneeling, crouching and crawling.  Tr. 444.  The VE opined that such an individual could perform her past work, which the VE identified as teacher aide.  The VE noted that teacher aide is generally identified as light work, but that Ms. Gunther had performed it at the heavy level of exertion because she had testified that she lifted children weighing up to 60 pounds.  The VE also opined that as a teacher aide, Ms. Gunther had transferable skills that included "some paper grading and test grading and some basic filing and sorting of children's work," that would allow her to do jobs such as sorter, basic file clerk and appointment scheduler.

The VE acknowledged that the job of teacher aide required certification, and that he did not know whether Ms. Gunther had ever been certified as a teacher aide.  Ms. Gunther's attorney asked the VE whether it was "possible that she wasn't doing the teacher aide job," and whether

there was a "nursery school attendant job that's classified that would be more relative to her actual experience." Tr. 448. Eventually, the VE characterized Ms. Gunther's past relevant work as "halfway in between" a teacher aide position and a nursery school attendant position. Tr. 455. The VE added, "I would acknowledge her primary role was interacting with children and serving as a role model but subsidiary skills were in some recordkeeping and just sorting and alphabetizing test papers or art projects and those would be readily transferable over to the sorter or the appointment scheduler." Tr. 457. After further questioning, the VE testified that Ms. Gunther would *not* be able to do a teacher aide job because of the ALJ's restriction on prolonged sitting. At the conclusion of the hearing, the ALJ asked the VE whether his testimony was consistent with the description of the teacher aide job, and the VE said yes.

## ALJ'S DECISION

At step two of the sequential evaluation, the ALJ found that Ms. Gunther had a severe combination of impairments: degenerative disk disease of the lumbar spine, obesity, and chronic narcotics abuse. She found that Ms. Gunther's diagnoses of anxiety, depression and chronic pain syndrome were not severe impairments, based on improvements in affect and mood reported by Dr. Arpaia in 2006. The ALJ rejected the opinion of Ms. Gunther's psychiatrist, Joseph Arpaia, M.D., that Ms. Gunther's "disability is related to the chronic pain she experiences," concluding instead that

> her allegations of symptoms of pain are attributable to seeking medication as part
> of her chronic narcotics abuse. Her reports of pain are a ruse to obtain narcotics
> from her providers, as discussed more below. Moreover, Dr. Arpaia did not have
> the benefit of review of Dr. [Geoffrey] Simmons' records that reveal a pattern of
> her drug seeking behavior. Therefore, the undersigned finds the State agency
> psychologists were not misplaced [sic] in finding that the claimant has no
> "severe" mental impairment. . . .

Page 6 - OPINION AND ORDER

Tr. 17.

At step four, the ALJ found that Ms. Gunther's past relevant work was as a teacher aide, because according to her testimony, she had done that work fulltime for nine months in 1997[2] and full time for nine months in 2000. The ALJ acfound that the work done in 2000 was "within six years of when disability must be established through the date last insured." Tr. 20. The ALJ concluded that through her date last insured, Ms. Gunther had the residual functional capacity ("RFC") to perform light work except for the additional limitation, based on Dr. Simmons's opinion, that she was to avoid sitting for a prolonged period of time, and therefore that she was capable of performing her past relevant work as a teacher aide.

Alternatively, the ALJ found that Ms. Gunther had the RFC to perform other jobs, based on the VE's testimony that she could perform the requirements of semiskilled sedentary jobs including sorter and employee scheduler.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. Meanel v. Apfel,

---

[2] "Past relevant work" is defined in the regulations as work that has been performed within 15 years of the date of the decision or 15 years before the disability, whichever is earlier. The work must have lasted long enough for the claimant to learn to do the job and meet the definition of "substantial gainful activity." 20 C.F.R. § 404.1565 (We consider that your work experience applies when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity. We do not usually consider that work you did 15 years or more before the time we are deciding whether you are disabled (or when the disability insured status requirement was last met, if earlier."), Social Security Ruling ("SSR") 82-61, 82-62. SSRs are issued by the Commissioner to clarify the Act's implementing regulations and the agency's policies. Holohan v. Massanari, 246 F.3d 1195, 1202 n. 1 (9th Cir. 2001). SSRs do not have the force of law, but they are binding on all components of the Social Security Administration. Id. ; 20 C.F.R. § 402.35(b)(1).

172 F.3d 1111, 1113 (9th Cir. 1999).  However, the Commissioner's decision must be upheld

even if "the evidence is susceptible to more than one rational interpretation." Andrews v. Shalala,

53 F.3d 1035, 1039-40 (9th Cir. 1995).

      The initial burden of proving disability rests on the claimant.  Meanel, 172 F.3d at 1113.

To meet this burden, the claimant must demonstrate an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment" which

"has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42

U.S.C. § 423(d)(1)(A).  A physical or mental impairment is "an impairment that results from

anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

## DISCUSSION

      Ms. Gunther challenges 1) the ALJ's findings at steps four and five of the sequential

evaluation; 2) the ALJ's credibility findings, which were based on Ms. Gunther's "drug seeking

behavior," or "chronic narcotics abuse," and her "active lifetstyle;" 3) the ALJ's failure to

provide sufficient grounds for rejecting the lay witness testimony of Ms. Gunther's sister, Trudy

Ralsfin; and 4) the ALJ's rejection of the disability opinions of her treating physicians, Dr.

Arpaia and Dr. Simmons.

    1.    Findings at steps four and five

      Although the burden of proof lies with the claimant at step four, the ALJ still has a duty

to make the requisite factual findings to support a conclusion that the claimant is capable of

performing his or her past work. Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001); SSR 82-

62; 20 C.F.R. §§ 404.1571 and 416.971, 404.1574 and 416.974, 404.1565 and 416.965.  This is

done by looking at the claimant's RFC and the physical and mental demands of the claimant's past relevant work. <u>Pinto</u> at 844-45; 20 C.F.R. §§ 404.1520(e) and 416.920(e). The claimant must be able to perform:

1.    The actual functional demands and job duties of a particular past relevant job; or

2.    The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

<u>Pinto</u> at 845; SSR 82-61. This determination requires "specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." <u>Pinto</u> at 845; SSR 82-62.  The regulations advise an ALJ first to consider past work as actually performed, and then as usually performed. <u>Id.</u>

Social Security Regulations name two sources of information that may be used to define a claimant's past relevant work as actually performed: a properly completed vocational report, SSR 82-61, and the claimant's own testimony, SSR 82-41. <u>Pinto</u> at 845. The best source for how a job is generally performed is usually the DOT. <u>Pinto</u> at 845-46; <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1435 (9th Cir. 1995); 20 C.F.R. §§ 404.1566(d) and 416.966(d); SSR 82-61. In order for an ALJ to accept vocational expert testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation." <u>Pinto</u> at 846, quoting <u>Johnson</u>, 60 F.3d at 1435.

SSR 82-61 warns that finding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable. <u>Pinto</u> at 846, quoting SSR 82-61.

Page 9 - OPINION AND ORDER

The VE testified at the hearing that Ms. Gunther's most recent past work, at the YMCA, was as a Teacher Aide II.  Ms. Gunther, however, described that work as "preschool teacher," tr. 82; she asserts that the appropriate DOT category for her work at the YMCA, as performed, is Nursery School Attendant.

The DOT describes Teacher Aide II, as follows:

Performs any combination of following duties in classroom to assist teaching staff of public or private elementary or secondary school: Takes attendance.  Grades homework and tests, using answer sheets, and records results.  Distributes teaching materials to students, such as textbooks, workbooks, or paper and pencils.  Maintains order within school and on school grounds.  Operates learning aids, such as film and slide projectors and tape recorders.  Prepares requisitions for library materials and stockroom supplies.  Types material and operates duplicating equipment to reproduce instructional materials.

DOT 248.367-074.  The DOT description of Nursery School Attendant is:

Organizes and leads activities of prekindergarten children in nursery schools or in playrooms operated for patrons of theaters, department stores, hotels, and similar organizations: Helps children remove outer garments.  Organizes and participaes in games, reads to children, and teaches them simple painting, drawing, handwork, songs, and similar activities.  Directs children in eating, resting, and toileting.  Helps children develop habits of caring for own clothing and picking up and putting away toys and books.  Maintains discipline.  May serve meals and refreshments to children and regulate rest periods.  May assist in preparing food and cleaning quarters.

DOT 249.367-074.

The VE acknowledged at the hearing that Ms. Gunther's past relevant work at the YMCA, as Ms. Gunther had performed it, was not within the ALJ's RFC because Ms. Gunther had been required to lift up to 60 pounds in that job.  The VE also admitted that Ms. Gunther's past relevant work at the YMCA was not consistent with the DOT description of Teacher Aide II, stating that it was "halfway in between" the jobs of Teacher Aide and Nursery School Attendant.

Page 10 - OPINION AND ORDER

Recognizing that the VE's testimony did not support a finding that Ms. Gunther could return to

her past work as performed in the YMCA job, the ALJ reached farther back into Ms. Gunther's

work history, to jobs performed for nine-month periods in 1997 and 2000, which the VE thought

might also be characterized as teacher aide jobs.  The ALJ found that Ms. Gunther could return to

these more remote jobs.  However, Ms. Gunther did not describe the exertional demands or the

duties of these jobs as she had performed them, and the VE had admitted that Ms. Gunther's

RFC was not within the exertional demands of a teacher aide job because a teacher aide job was

performed at the "full light level," which was inconsistent with the ALJ's RFC finding that Ms.

Gunther could stand no more than six hours in an eight-hour day.

I conclude, therefore, that the ALJ's step four finding that Ms. Gunther could still

perform the two jobs held seven and 10 years before the hearing is not supported by the requisite

evidence.  As noted, there was neither evidence from Ms. Gunther about those jobs as she had

performed them nor any evidence from the VE that the RFC as found by the ALJ was within the

scope of a teacher aide job as "generally required" by an employer.  Thus, the ALJ failed to

satisfy the requirement that she make "specific findings" on the physical and mental demands of

the jobs held in 1997 and 2000 and the relationship between Ms. Gunther's RFC as found by the

ALJ and those jobs.  See Pinto at 845 and SSR 82-62.   The ALJ's step four determination was

legally erroneous and unsupported by substantial evidence.

The ALJ made an alternative step five finding, that Ms. Gunther retained the RFC to

perform the jobs of sorter, DOT 209.687-022, and appointment scheduler, DOT 237.367-010.

According to the DOT, these are sedentary jobs which, by definition, involve "sitting most of the

time," with "walking or standing for brief periods of time."  DOT Appendix C.  The VE testified

at the hearing that the two jobs were "primarily performed while sitting," and required the ability to "sit throughout the workday basically." Tr. 465. The job descriptions are inconsistent with the ALJ's hypothetical to the VE, which was that the individual in question could not do a job that required prolonged continuous sitting. Testimony from a VE that does not accurately reflect all of the claimant's limitations does not constitute substantial evidence to support an ALJ's determination of disability status. See, e.g., Cooper v. Sullivan, 880 F.2d 1152, 1158, n. 13 (9th Cir. 1989). The VE's testimony has no evidentiary value as support for the ALJ's finding that Ms. Gunther was not disabled.

    2.    Credibility findings

The ALJ found Ms. Gunther not credible about her limitations because 1) the objective medical evidence did "not support a more restrictive functional capacity;" 2) Ms. Gunther had a "long standing history of drug-seeking behavior;" and 3) Ms. Gunther's "daily activities are inconsistent with disability." Tr. 19.

If a claimant provides medical evidence establishing an objective basis for an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1986). If the medical evidence supports the *existence* of pain, the claimant is not required to submit medical evidence which supports the *degree* of pain. Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991)(en banc). The ALJ's finding that Ms. Gunther's testimony was not credible simply because it was not fully corroborated by objective medical evidence of a "more restrictive functional capacity" is not a clear and convincing reason for rejecting it. See Vertigan v. Halter, 260 F.3d 1044 (9th Cir. 2001).

Page 12 - OPINION AND ORDER

The ALJ's adverse credibility finding based on Ms. Gunther's "long standing history of drug seeking behavior," and the ALJ's conclusion that she was therefore a "narcotics addict" is not only unsupported by substantial evidence in the record, it is flatly contradicted.  Although the ALJ cites Dr. Simmons as the source of this finding, the citation in the ALJ's opinion is to the notes of a Social Security reviewing physician, Sharon Eder, M.D.  Tr. 395.  In any event, the finding is erroneous.  The court's has reviewed Dr. Simmons's entire medical file, and has found no evidence to support the ALJ's finding of drug seeking behavior or the ALJ's diagnosis of Ms. Gunther as a narcotics addict.  In his chart notes, Dr. Simmons refers to Ms. Gunther's escalating "need[] for narcotics," and her use of a narcotics contract, and expresses concerns about putting her on higher and higher doses.  But Dr. Simmons also says, "Most of the time her back is controlled with narcotics, but she does require the narcotics," tr. 271; "I do not believe we are dealing with drug seeking behavior;" tr. 270, and "I do believe this is not seeking narcotics."  Tr. 264.  Tr. 270.  On another occasion, Dr. Simmons wrote that Ms. Gunther "saw Dr. Bovee recently, and he says she is not an addict, and there is good reason to support that position," tr. 279, and that "Dr. Bovee has written us a note saying he does not feel she is addicted."  Tr. 282.  The ALJ's finding that Ms. Gunther demonstrated drug seeking behavior and the ALJ's diagnosis of narcotics addiction is without evidentiary support, and therefore does not constitute a clear and convincing reason for finding Ms. Gunther not credible.[3]

---

[3] Because there is no evidentiary support for the ALJ's finding of drug seeking behavior, there is also no evidentiary support for the ALJ's finding that Ms. Gunther's pain complaints and allegations of chronic pain syndrome were "a ruse to obtain narcotics."  Consequently, the ALJ's step two findings are in error.

The ALJ found that Ms. Gunther's daily activities were inconsistent with disability, because she was able to do light housework, prepare meals, shop for clothes and groceries, drive a car, work in the garden, engage in personal grooming, go outside daily, paint and sketch, and bird watch.  As support for this finding, the ALJ cites the report submitted by Ms. Gunther's sister, Trudy Ralsfin–evidence the ALJ found not credible.  Moreover, the ALJ failed to consider Ms. Ralsfin's additional comments in that same report that Ms. Gunther "does *some* household chores–not as many as she used to" and that it "takes her longer to do these duties–she has to take breaks and rest her back."  Tr. 88. In her report, Ms. Ralsfin states that Ms. Gunther does "limited cleaning," such as "light vacuuming, dishes and laundry," but that her husband "does ironing, mopping and mowing."  Tr. 90.  According to Ms. Ralsfin, Ms. Gunther's gardening consists of "some watering" and picking flowers.  Id.  Ms. Ralsfin noted that she helps Ms. Gunther shop "when large items are bought," and that "whenever we grocery shop I always help her unload her groceries and put them away."

Courts in this jurisdiction have held on many occasions that Social Security claimants are not to be penalized for "attempting to lead normal lives in the face of their limitations," and that many home activities are not necessarily transferable to the workplace.  See, e.g., Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273 (9th Cir. 1996); Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987)(claimant need not be excluded from all forms of human and social activity in order to be deemed eligible for benefits).

Activities that include taking care of oneself, hobbies, therapy and household tasks are not considered substantial gainful activity that disqualifies a claimant from receiving disability benefits.  Corrao v. Shalala, 20 F.3d 943 (9th Cir. 1994).  In Vertigan v. Halter, 260 F.3d 1044 (9th

Cir. 2001), the court rejected the ALJ's credibility findings based on the claimant's ability, despite a back condition, to go grocery shopping with assistance, walk approximately one hour in malls, swim, watch television, and read.  The same rationale applies to the ALJ's credibility findings here.

I conclude that the ALJ has failed to provide clear and convincing reasons for rejecting Ms. Gunther's testimony.

        3.        <u>Rejection of lay testimony</u>

Lay testimony as to a claimant's symptoms is competent evidence which the ALJ must take into account, <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993) unless she expressly determines to disregard such testimony, in which case "[s]he must give reasons that are germane to each witness." Id. <u>See also Stout v. Commissioner</u>, 454 F.3d 1050, 1053 (9th Cir. 2006).

Despite having relied on the report of Ms. Ralsfin to support her findings about Ms. Gunther's daily activities, the ALJ stated that she did not find Ms. Ralsfin's testimony credible: "For the same reasons the claimant is not credible herself, the statements of her sister regarding any allegation of disability, even if accurate, . . . only reflects the chosen presentation by the claimant, who has demonstrated overstating her symptoms."  Tr. 19.  Besides the fact that the ALJ has failed to provide sufficient reasons for rejecting the credibility of Ms. Gunther, the ALJ's finding that Ms. Ralsfin's report reflects only Ms. Gunther's "chosen presentation" is nonsensical.  The ALJ has not explained what she means by "chosen presentation."  Ms. Ralsfin's report states that her comments are based on knowing her sister for 55 years and being with her sister three to six hours a week. Tr. 88.  The court is unable to comprehend how such a close and consistent observer could be duped by a "chosen presentation."  The ALJ's rejection of

Ms. Ralsfin's testimony is legally erroneous and unsupported by substantial evidence in the record.

      4.      <u>Opinions of treating physicians Simmons and Arpaia</u>

Social Security regulations distinguish among the opinions of three types of physicians: 1) those who treat the claimant; 2) those who examine, but do not treat; and 3) those who neither examine nor treat.  20 C.F.R. § 404.1527(d); <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201 (9th Cir. 2001).  A treating physician's opinions carry more weight than those of an examining physician, and both treating and examining physicians' opinions carry more weight than those of a non-treating, non-examining physician, such as the practitioners retained by the Commissioner to review Ms. Gunther's records. <u>Holohan</u>, 246 F.3d. at 1202.

The ALJ apparently accepted the opinions of the Commissioner's reviewing practitioners in their entirety, except for Dr. Simmons's opinion that Ms. Gunther should avoid prolonged sitting.  The ALJ disregarded, without comment, Dr. Simmons's opinion that Ms. Gunther was "disabled by her pain," and "dependent upon large doses of narcotics." Tr. 274.  The ALJ rejected the opinion of Dr. Arpaia that Ms. Gunther's "disability is related to the chronic pain she experiences," but gave no reason for doing so except the now-discredited finding that Ms. Gunther's alleged pain was solely attributable to drug seeking.

The ALJ may not reject "significant probative evidence" without explanation. <u>Flores v. Shalala</u>, 49 F.3d 562, 571 (9th Cir. 1995).  The ALJ's failure to offer any explanation of why she disregarded the opinions of a treating physician and a treating psychiatrist in favor of those of the agency's reviewing practitioners is legal error.

     5.    <u>Remand</u>

Sentence four of 42 U.S.C. § 405(g) gives the court discretion to decide whether to remand for further proceedings or for an award of benefits. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1179 (9th Cir. 2000).

In <u>Smolen</u>, 80 F.3d at 1292, the court held that improperly rejected evidence should be credited and an immediate award of benefits be made when: 1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, 2) there are no outstanding issues that must be resolved before a determination of disability can be made, and 3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. I conclude that all three of the <u>Smolen</u> factors are satisfied in this case.

## CONCLUSION

This case is reversed and remanded for an award of benefits.

IT IS SO ORDERED.

Dated this      29th      day of March, 2011.


    /s/ Garr M. King
    Garr M. King
    United States District Judge


Page 17 - OPINION AND ORDER